UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 09-210-GWU


MARTHA J. PAGE,                                                    PLAINTIFF,


VS.                                **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

Martha Page brought this action to obtain judicial review of an unfavorable

administrative decision on her application for Supplemental Security Income (SSI).

The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine
      whether the claimant's severe impairment(s) or combination of
      impairments meets or equals in severity an impairment listed
      in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

09-210  Martha J. Page

Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

09-210  Martha J. Page

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

09-210  Martha J. Page

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

4

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

09-210  Martha J. Page

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

6

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Page, a former general office clerk, suffered from impairments related to degenerative disc disease of the lumbar spine, anxiety, depression, and a personality disorder.  (Tr. 14, 20).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 15).  Since the claimant's past relevant work could still be performed, she could not be considered totally disabled.  (Tr. 20).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  However, the current record also does not mandate an immediate award of SSI.  Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

In determining that Page could return to her past relevant work, the ALJ relied heavily upon the information provided by Vocational Expert Betty Hale.  (Id.). The hypothetical question presented to Hale included an exertional limitation to light level work, restricted from a full range by such non–exertional restrictions as (1) a need to avoid repetitive bending, twisting and climbing ropes, ladders or scaffolds; (2) an inability to more than occasionally balance, kneel, crouch, crawl and climb ramps or stairs; (3) "moderate to marked' limitations in maintaining attention and concentration for extended time periods, interacting appropriately with the general

7

public, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others; (4) a limitation to repetitive, one- or two-step non-production work; and (5) an inability to work on an assembly line or perform quota production work.  (Tr. 57-58).  The hypothetical individual would retain the ability to perform the basic requirements of unskilled work including no restriction on handling simple instructions, making judgments commensurate with unskilled work, responding appropriately to supervision, co-workers and work situations and dealing with changes in routine work settings.  (Tr. 58).  In response, the witness testified that the general office work could still be performed.  (Id.).  Finally, the expert also cited a number of other jobs which could still be done.  (Tr. 59).

The vocational factors considered by Hale did not fairly characterize Page's mental condition.  Psychologist Kathleen Lindsey, Page's treating mental health professional, opined that the patient would have a "marked" restriction of functioning in a work setting without exhibiting disruptive or distracting behavioral extremes with "marked" defined as "generally unable to maintain normal or appropriate relationships, with frequent serious disruptions due to behavioral extremes."  (Tr. 393).  The plaintiff was also noted to have a "marked" limitation of ability to complete a normal workday on a regular and continuous basis without interruption from psychologically-based symptoms, and performing at a consistent pace without an unreasonable amount or length of rest breaks was also rated as "marked."  In

this case, "marked" was  defined as "would most of the time be unable to complete complex tasks, and would frequently be unable to complete even simple tasks in a regular and continuous work setting."  (Id.).   These are far more severe mental restrictions than those presented to the vocational expert.   The ALJ rejected Lindsay's opinion and noted a number of reasons for this finding.  (Tr. 18-19). Clearly, this opinion does not provide support for the ALJ's denial decision.

One of the reasons cited by the ALJ for rejecting the opinion of Lindsey was a number of inconsistencies between it and the opinion of Psychologist Marc Plavin, an examining consultant.  (Tr. 18).   Plavin was the only other mental health professional to examine Page.  Plavin diagnosed an anxiety disorder, a depressive disorder and possible mood and personality disorders.  (Tr. 303).  The examiner opined that the plaintiff would have a "fair" ability in such areas as acting socially, tolerating stress, understanding and remembering instructions, sustaining concentration and persistence for tasks, interacting with people at work, and responding to work pressures.  (Tr. 303-304).   Plavin also indicated that the claimant's ability to complete tasks would be "poor."  (Tr. 303).  These restrictions appear more severe than those presented in the hypothetical question.   The hypothetical question did not include a "poor" ability to complete tasks.  While the question restricted interaction with the general public, it did not include limitations concerning co-workers and supervisors.  Finally, the question did not include a restriction concerning stress.  These are significant limitations which could preclude

9

many jobs.  Therefore, Plavin's opinion also does not support the administrative decision.

Psychologists Ilze Sillers (Tr. 305-308) and Jane Brake (Tr. 372-375), the non-examining medical reviewers, each reviewed the record and indicated that Page would be "moderately" limited in such areas as maintaining attention and concentration, interacting appropriately with the general public, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others.  The mental factors of the hypothetical question were consistent with these opinions.  An ALJ may rely upon the opinion of a non-examiner over that of an examining source when the non-examiner reviews the record and clearly states the reasons for his differing opinion.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Social Security Ruling 96-6p indicates that when the examiner is also a treating source, the non-examiner must have reviewed a complete record and one which includes the opinion of a specialist who provided more detailed and comprehensive information than that which was available to the treating source.  In the present action, Sillers reviewed  the record in July of 2006 (Tr. 307) and Brake reviewed it in November of 2006 (Tr. 374).  Neither reviewer had the opportunity to see and comment upon Lindsey's January, 2007 assessment form (Tr. 391-394) or the treatment notes from Lindsey dated from December, 2007 to March 2008 (Tr. 408-422).  While Sillers saw Plavin's opinion, she merely stated that it was not entitled to full weight without giving any reasons.  (Tr. 307).  Brake

09-210 Martha J. Page

merely adopted the opinion of Sillers without comment. (Tr. 374). Therefore, these opinions are insufficient to offset those of the actual examining sources and, so, substantial evidence does not support the ALJ's findings.

The Dictionary of Occupational Titles (DOT) at Code Number 209.562-010 concerning the position of general office clerk, notes that the worker:

> Performs any combination of following and similar clerical duties requiring limited knowledge of systems or procedures: Writes, types, or enters information into computers, using keyboard, to prepare correspondence, bills, statements, receipts, checks or other documents, copying information from one record to another. Proofreads records or forms. Counts, weighs, or measures material. Sorts files and records. Receives money from customers and deposits money in bank. Addresses envelopes or packages by hand or with typewriter or envelope stuffing machine. Answers telephone, conveys messages and runs errands. Stamps, sorts, and distributes mail. Stamps or numbers forms by hand or machine. Photocopies documents, using photocopier.

This job would obviously be precluded by Lindsey's restrictions. With regard to Plavin's findings, a person with a "poor" ability to complete tasks would have difficulty performing this type of work. The job also appears to require a good deal of interaction with the co-workers and supervisors which would be affected by her "fair" ability to interact with people at work. Therefore, this job would likely be precluded under the opinions of the examining sources and the action must be remanded for further consideration.

Page also argues that the ALJ erred in evaluating her credibility by not properly considering her medication history as required by Social Security Ruling

09-210  Martha J. Page

96-7p.  The court has already concluded the denial decision was not supported by substantial evidence due to the ALJ's failure to properly evaluate the evidence of record regarding the plaintiff's mental status.  The claimant will be free to present arguments concerning this issue to an ALJ following the remand.  Therefore, the court does not reach this question.

The undersigned concludes that the administrative decision should be reversed and the action remanded to the Commissioner for further consideration of Page's mental status.  Therefore, the court must grant the plaintiff's summary judgment motion to this limited extent and deny that of the defendant.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 8th day of March, 2010.

**Signed By:**

**G. Wix Unthank**

**United States Senior Judge**